**STATE OF WEST VIRGINIA**

**FILED**

**November 8, 2019**

*In re* **M.B.**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 19-0366** (Ohio County 18-CJA-89 MJO)

## MEMORANDUM DECISION

Petitioner maternal grandmother H.B., by counsel Michael B. Baum, appeals the Circuit Court of Ohio County's March 19, 2019, order terminating her custodial rights to M.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Joseph J. Moses, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and terminating her custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2018, the DHHR filed a child abuse and neglect petition alleging that six-year-old M.B. was abandoned by his mother and left in petitioner's care. The DHHR reported that petitioner failed to provide proper medical care to M.B, including treatment for a condition which caused M.B.'s toe to appear "completely black" and "swollen." The DHHR further alleged that petitioner's home was "in a dilapidated state and filled with clutter," including a hallway full of toys and old rugs that was "waist-high" at its lowest point, and "almost to the ceiling at its highest point." The yard of the home was full of scrap metal and debris.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Additionally, the DHHR alleged petitioner did not ensure that M.B. exercised proper hygiene and noted that the child was not "potty trained." During the DHHR's investigation, the child described that he suffered from "itches that won't go away." Petitioner denied that bed bugs were in the home, but DHHR workers observed a "bed bug trap box" in the kitchen. Finally, the DHHR alleged that prior referrals were received regarding petitioner's care of M.B. and the family previously received services, such as "[a]dult life skills . . . in August and September of 2016, and from January, 2017 through July of 2017. Safety services were put in the home from September . . . 2016 through March . . . 2017. Supervision was put in the home from May . . . 2017 until March . . . 2018."

Later in August of 2018, the circuit court held a preliminary hearing and the DHHR presented testimony and photographs consistent with the allegations in the petition. Further, the DHHR worker testified that he sought medical treatment for M.B.'s infected toe prior to removing the child from petitioner's home, but that petitioner did not fill the prescription provided as a result of that treatment and the medication was never utilized. Petitioner presented no evidence. The circuit court ultimately found that M.B. was in imminent danger and ratified his removal from petitioner's home.

In September of 2018, petitioner stipulated to the allegations that she failed to provide appropriate housing, the home was infested with bugs, the child exhibited poor hygiene and was not "potty trained," and the home and yard were unsafe for the child. The circuit court accepted this stipulation and adjudicated petitioner as an abusing parent. Petitioner filed a motion for a post-adjudicatory improvement period, and the circuit court scheduled an evidentiary hearing on the motion for a post-adjudicatory improvement period in January of 2019. In the interim, petitioner was ordered to participate in a forensic psychological and parental fitness examination and completed that examination in October of 2018.

At the hearing on the motion for a post-adjudicatory improvement period, petitioner testified that the home had "odds and ends" that needed to be repaired and that the home needed "straightened up." Petitioner asserted that she had addressed those items, but agreed to relocate if the home was "deemed irreparable." On cross-examination, petitioner denied that M.B.'s toe was black and suggested that his toenail was the issue. Petitioner also testified she only needed to clean M.B.'s room and the hallway before he returned.

A DHHR worker testified that he last visited petitioner's home in November of 2018 and that many of the unsafe and unsanitary conditions still existed in the home, such as "relatively high" stacks of scrap metal, pests in the kitchen, and a partially blocked upstairs hallway. Additionally, M.B.'s foster parent confirmed that the child was not accustomed to using the toilet, but that he was trained to do so within a week of arriving at their home. A Wheeling city building inspector testified, at the evidentiary hearing, that petitioner's home had no furnace and was heated by space heaters only. The inspector explained that the home could be condemned based on this lack of a permanent heating supply. Further, the inspector noted "numerous electrical hazards," fire hazards, and a failing roof. A service provider testified that she worked with petitioner for four months during the pendency of this proceeding and noticed little improvement. Additionally, the service provider observed bed bugs on her shoes following a

visit to petitioner's home and stopped entering the home for fear of spreading the bugs to other clients.

Finally, petitioner's forensic psychological and parental fitness examiner testified that petitioner lacked insight into the conditions of the neglect. The examiner opined that, based on the lack of change after services, there was a small likelihood of success with additional services. Petitioner's psychological examination was admitted. During the examination, petitioner indicated that she "took [M.B.] to all his appointments, he got all his shots. One time, I forgot to take him to the hospital for his toe that I didn't know nothing about and [now] I got to do all this crap." Petitioner did not mention her failure to obtain and utilize the prescribed medication for M.B.'s toe infection. Further, petitioner asserted that "[t]hey said my house was horrible and it wasn't." The examiner ultimately concluded in the report that petitioner did not have the parental capacity to care, protect, and change in order to provide for her child. Based on the evidence presented, the circuit court found that petitioner lacked insight into the conditions of abuse and neglect as evidenced by her indication that only a few items needed to be remedied in the home. Accordingly, the circuit court denied petitioner's motion for a post-adjudicatory improvement period.

The circuit court held a final dispositional hearing in February of 2019, where petitioner moved for a post-dispositional improvement period and proffered that certain improvements were made to the home since the prior hearing. The DHHR objected to petitioner's motion and presented recent photographs of her home in opposition to her proffer. The circuit court found that the photographs of the home were taken in February of 2019 and "show little improvement in the home." The circuit court characterized the home as "deplorable and unsafe." Additionally, the circuit court noted that it previously found that petitioner did not "appreciate the extent of the changes that need[ed] to be made" and found "that remain[ed] true" at the dispositional hearing. The circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of M.B. to terminate petitioner's custodial rights. Accordingly, the circuit court terminated petitioner's custodial rights by its March 19, 2019, order. Petitioner now appeals that order.[2]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

_____

[2]M.B.'s biological parents' parental rights were terminated during the proceedings. The maternal grandfather's custodial rights were also terminated. According to the parties, the permanency plan for the child is adoption in his current foster placement.

3

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period.[3] Petitioner asserts that she presented clear and convincing evidence that she was likely to fully participate in an improvement period based on her participation in services. Petitioner objects to the circuit court's findings that she lacked insight into the conditions of neglect and stresses that she made admissions to allegations in the petition as proof that she acknowledged the neglect. Finally, petitioner argues that the circuit court applied an incorrect standard when ruling on the motion by considering whether petitioner was likely to improve during an improvement period. Petitioner emphasizes the correct standard is if "the [parent] demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). Upon review, we find that petitioner is entitled to no relief.

Petitioner's argument that the circuit court applied the wrong standard misrepresents both the record and this Court's prior holdings. As this Court has long held,

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

_____

[3]In support, petitioner asserts that she is a psychological parent of M.B. However, petitioner never asserted this argument below, and the circuit court did not hear evidence as to whether she was a psychological parent. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). As such, any argument on appeal predicated on petitioner's assertion of psychological parent status will not be considered. However, it is important to note that even if the circuit court had found petitioner was the child's psychological parent, it would have had no effect on the decision to deny petitioner a post-adjudicatory improvement period. Regardless of her designation as either a custodial or psychological parent, the record shows, as more fully set forth herein, that petitioner failed to satisfy the necessary burden to obtain a post-adjudicatory improvement period. Accordingly, she is entitled to no relief.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Further, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.,* 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Here, the circuit court correctly considered evidence that petitioner lacked insight into the conditions of neglect. Testimony showed that petitioner failed to acknowledge the hazards that her home presented to the child or her issues in parenting the child, such as failing to remedy his inability to use the toilet. Further, although petitioner stresses that she explicitly admitted to the conditions through her stipulation to certain allegations in the petition, she continued to deny or minimize the conditions throughout the proceedings. Indeed, during her psychological examination, petitioner asserted that the home was not as deplorable as shown in the photographs the DHHR introduced into evidence. Petitioner believed that the home only needed to have a few "odds and ends" repaired and needed to be "straightened up." Yet, the circuit court found that the home "remain[ed] unsafe" at the time of the dispositional hearing. It is clear that the conditions of the home and care for the child required an undertaking that petitioner would not acknowledge. Therefore, the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period.

Next, petitioner argues that the circuit court erred in terminating her custodial rights as there was a reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Petitioner asserts that she should have been granted an improvement period to correct the conditions. West Virginia Code § 49-4-604(b)(6) provides that circuit courts may terminate custodial rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(c)(3) provides a list of situations in which there is "no reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected." Petitioner asserts that none of the situations addressed in West Virginia Code § 49-4-604(c)(3) exist herein, but also acknowledges that the specific situations listed in West Virginia Code § 49-4-604(c)(3) is "not exclusive." *Id.* Generally, a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Even though petitioner asserted some improvement in the condition of the home after being provided services, the circuit court found, overall, the home showed "little improvement." Clearly, petitioner could not fully remedy the conditions because she would not acknowledge their severity. Moreover, petitioner's history with DHHR involvement displayed a pattern of mild progress that would eventually revert, and require further services. Upon these considerations, the circuit did not err in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Likewise, as the conditions had not been corrected, the child would have been subjected to the dangerous conditions of the home if returned to petitioner's care. Therefore, it was necessary for the child's welfare to terminate petitioner's custodial rights.

Finally, to the extent petitioner argues a less-restrictive alternative should have been imposed, such as permanent guardianship, we have previously held as follows:

"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The requisite findings are fully supported by the record below. Further, termination of custodial rights is necessary for the child to be adopted, which is "the preferred permanent out-of-home placement of [a] child." Syl. Pt. 2, in part, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Therefore, we find no error in the circuit court's termination of petitioner's custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 19, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 8, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

6